### WALL v. UNITED STATES MINING CO.

(Circuit Court of Appeals, Eighth Circuit. December 1, 1916.)

#### No. 4675.

EASEMENTS ⬤⟳32—MINING TUNNEL—EXTINGUISHMENT BY ADVERSE POSSESSION.

Plaintiff's predecessors in title of a mining claim about 1875 constructed a tunnel to such claim through claims then owned by predecessors of defendant, the entrance being on one of such claims. A flume was also constructed through the tunnel for drainage purposes, through which water flowed to the entrance. Plaintiff's predecessors ceased using the tunnel in 1880, and in 1887 the predecessors of defendant took possession of it, replaced the flume, constructed a reservoir, and extended a pipe from the entrance to carry the water to their works. They also boarded up the entrance, and since that time have held exclusive possession. It did not appear in what manner plaintiff's predecessors acquired the easement to construct and maintain the tunnel through the property now owned by defendant. *Held* that, however the same was acquired under the laws of Utah, it was extinguished by the open, notorious, and exclusive possession and use of the tunnel by defendant and its predecessors for more than 20 years.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 84; Dec. Dig. ⬤⟳32.]

Appeal from the District Court of the United States for the District of Utah; J. A. Marshall, Judge.

Suit in equity by Enos A. Wall against the United States Mining Company. Decree for defendant, and complainant appeals. Affirmed.

William H. King, of Salt Lake City, Utah, for appellant.

Russell G. Schulder, of Salt Lake City, Utah (W. H. Dickson and A. C. Ellis, Jr., both of Salt Lake City, Utah, on the brief), for appellee.

Before SMITH and CARLAND, Circuit Judges, and AMIDON, District Judge.

---

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SMITH, Circuit Judge. The appellant, Enos A. Wall, is now the owner of what is known as the Ashland No. 2 mining claim, and the appellee, the United States Mining Company, is the owner of the Mountain Gem extension, the Fanny Bemis, and the First South extension of the Galena mining claims; all in the West Mountain mining district, in Salt Lake county, Utah. These all extend from the northeast to the southwest, but the side lines are not exactly parallel. In 1874 Senator George Hearst became the owner of the Ashland No. 2, either alone or in company with R. C. Chambers and J. B. Haggin. About April, 1875, they commenced the excavation of a tunnel to work the Ashland No. 2 claim and to drain it. This tunnel started on the First South extension of the Galena, and ran, generally speaking, northwest, through the claim on which it started, and through the Fanny Bemis and the Mountain Gem extension, and through and beyond the Ashland No. 2. Two other tunnels had previously been excavated on and to the Ashland mine. The new tunnel was lower than the others, and, as already stated, was for the purpose of working the Ashland mine, and to draw off any water there struck. The exact sum spent in the construction of the tunnel does not appear. Substantially all the parties to the transactions of those early days are now dead, but R. C. Chambers was the manager of the property at that time, and his books of account are in evidence. It appears therefrom that $21,000 was spent in 1874, but this was before any work was done on the tunnel in question. They show that the disbursements in 1875 were $26,813.07; that these fell off in 1876 to $13,783.29, in 1877 to $5,884.13, in 1878 to $1,473.75, in 1879 to $50, and in 1880 to $51.37. The receipts fell off, though not in the same ratio. The total receipts from 1875 to 1880, inclusive, were $13,710.13, and the total expenses during those years were $48,055.61. Thus there was a net loss during these years of over $34,000. This same report shows that about 1881 or 1882 negotiations were being carried on to lease or sell this tunnel to the owners of the Last Chance, which lies northwest of the Ashland No. 2, and it was contemplated to sell or lease it to the owners of some other claims lying north of the Ashland. This may explain why the tunnel was excavated about 160 feet beyond the lines of the Ashland. For aught that appears, the tunnel was completed, and work on the Ashland through it ceased, not later than December, 1880, though work on and through it may have ceased at a much earlier date.

There is no evidence as to what right, if any, Hearst and his associates had to start this tunnel on the First South extension of the Galena, or to penetrate the Fanny Bemis or what is now the Mountain Gem extension. We may say in passing that the record seems to show the latter claim was government land at the time the tunnel was put through it. It was not located until September 27, 1892. Attention has not been called to any authority Hearst and his associates had to run the tunnel through unlocated government land. The tunnel as constructed had a small flume down the center to carry the water off. There was a wooden railroad track along it. At and prior to the construction of the tunnel a number of people had taken up their abode

near where the mouth of the tunnel was located. Soon after the Hearst interests ceased work on the tunnel, some one at least in the interest of these settlers put a door in the mouth of the tunnel and placed a barrel in the dump, into which the water from the tunnel was conducted, and used the water from this source for domestic purposes. In 1884 the predecessors of the defendant took at least a partial possession of the tunnel and the water. Some time in 1887 the predecessors of the defendant, the door having rotted down, closed the mouth of the tunnel by nailing plank up across the first of the timbering in the tunnel. Numerous witnesses so testify, and no one but Emanual Beck contradicts them, if he may be said to do so. He testifies the door was there in 1897. It is claimed this was a mistake upon the part of the witness, and it is true that the last thing in the condensed statement of the evidence in the cross-examination of this witness is:

"In 1887 the door was so rotten he could not use it any more, and put boards on it."

We think the witness meant 1887 when he said 1897; but, whether he did or not, the overwhelming weight of the testimony is that in 1887 the end of the tunnel was closed by plank nailed on. The mouth of the tunnel has thus been kept planked up, so that no one could enter the tunnel without removing the plank, ever since, and never after 1887 was there any access to the tunnel, except by tearing these planks loose. The defendant and its predecessors put from time to time new timbers in the tunnel, replaced the flume, put an embankment in the tunnel, which in effect established a reservoir, and placed a pipe from the mouth of the tunnel to the works of the defendant. The complainant claims title to the tunnel and the dumping ground at its portal as appurtenant to its ownership of the Ashland claim. The prayer is that the court "decree it is declared and adjudged that the complainant is the owner of said premises, and that the defendant has not any estate or interest whatsoever in and to said tunnel and the space occupied for dumping purposes, and also that said defendant be forever debarred from asserting any claim thereto, or to any part thereof, adverse to the complainant," and for general equitable relief.

Upon the argument the complainant urges that his predecessors acquired the right to construct the tunnel in such a way as to imply a license from the original owners of the soil, that the digging of the tunnel without objection operates to estop the owners to assert that the predecessors of plaintiff did not have a license to construct it, and this his predecessors acquired an easement to construct and maintain the tunnel by prescription. Let it be conceded that the predecessors of plaintiff acquired a license or easement, or that there was an estoppel upon the predecessors of the defendant in some of the ways suggested. Having made this concession, there was nothing to prevent the defendant or its predecessors from reacquiring the property by any method that it could be acquired by the plaintiff and its predecessors. In its answer the defendant says:

"That for more than 29 years last past it and its predecessors in interest have been, and this defendant now is, in the open, notorious, peaceful, exclusive, and adverse possession of the said tunnel and the whole thereof, includ-

ing the portal thereof and the dump at and near the said portal, lying and being in or beneath the surface of the said First South extension of Galena lode mining claim, U. S. lot 364. And this defendant further alleges that it and its predecessors have, during all of said period of 29 years, and this defendant is now, using the said tunnel and the water issuing therefrom for its and their own sole and exclusive use and benefit; and defendant further alleges that, in order to enable it to use the said tunnel and the water flowing therefrom, it did, more than 29 years ago, make and construct in the said tunnel, at and near the portal thereof, a flume or conduit to conduct the water issuing therefrom to tanks or barrels, for domestic and culinary purposes by the employés of this defendant and its predecessors in interest, and that at the time of so constructing and erecting the said conduit or flume for conveying the said water, as aforesaid, the predecessors in interest of this defendant, at the mouth or portal of the said tunnel, erected an obstruction or barrier, by which all persons, except the predecessors in interest of this defendant, were entirely excluded from the said tunnel and not permitted to enter therein; that ever since the time of the erection of the said barrier or obstruction, to wit, more than 29 years ago, down to the present time, the said predecessors in interest of this defendant, and this defendant, have caused the said barrier and obstruction to be and remain at the mouth or portal of the said tunnel, and have, from thence hitherto, excluded and prevented all persons, except the agents and employés of the predecessors in interest of this defendant and this defendant, from entering in, or having any access whatever to, the said tunnel, or to any of the waters flowing therefrom."

This defense is sustained by the evidence, and if the plaintiff or its predecessors acquired title by any of the means indicated, the defendant from 1887 to August, 1913, a period of over 26 years, had such open, notorious, peaceable, exclusive, and adverse possession of the tunnel, and of the entrance thereto, that it must under the laws of Utah be presumed to have been acquired in right, and it cannot now be disturbed. Chapter 3, tit. 88, of the Code of Civil Procedure of Utah of 1907, fixes the limitations upon actions to recover real property. Section 2860 provides that no cause of action shall be effectual unless the person prosecuting the action or his ancestor or predecessor or grantor was seised or possessed of the property within 7 years. Section 2862 provides for acquiring property under color of title. Section 2863 defines what possession shall be necessary to that end, and thereunder (subdivision 2), "where it has been protected by a substantial inclosure." Section 2864 provides for acquiring property under claim of right without color of title, and section 2865, in defining what possession is necessary thereunder, includes subdivision 1: "Where it has been protected by a substantial inclosure."

These laws have been in force from an early time in Utah, but in Harkness v. Woodmansee, 7 Utah, 227, 26 Pac. 291, Funk v. Anderson, 22 Utah, 238, 61 Pac. 1006, and Coleman v. Hines, 24 Utah, 360, 67 Pac. 1122, the Supreme Court of Utah held that the 7-year statute of Utah did not apply to the acquisition of an easement, and that to acquire an easement by prescription the party must show that he had exercised the easement under a claim of right, and that his possession of it was peaceable, without interruption, open, notorious, and exclusive for the period of 20 years. If the complainant based his title entirely upon prescription, we must hold that within the 20 years the defendant and its predecessor took possession of the tunnel in such

a way as to wholly exclude the plaintiff's predecessor from any use of the alleged easement. The claim that the circumstances imply a license from the original owners of the soil is not sustained, because there is no evidence that the defendant or its predecessors knew that the plaintiff's predecessor was constructing the tunnel; and the same objection exists to the plaintiff's title by way of estoppel, but whether the defendant or its predecessor, in reacquiring the title by limitation after it was once acquired by the plaintiff's predecessor, would be governed by the 7-year statute, or the 20-year rule established by the courts of Utah, the defendant and its predecessor have, by closing and keeping closed the mouth of the tunnel for more than 26 years, extinguished any claim of the plaintiff.

This finding being in harmony with the decision of the District Court, its decree dismissing the plaintiff's bill is affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes